IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**WANDA LIZZETTE PÉREZ**,
      Petitioner,

      v.

**COMMISSIONER OF SOCIAL
SECURITY**,

      Defendant.

Civil No. 19-1874 (BJM)

## OPINION AND ORDER

Wanda Lizzette Pérez ("Pérez") seeks review of the Social Security Administration Commissioner's ("Commissioner") finding that she is not entitled to disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Docket No. ("Dkt.") 2, 27. Pérez solely takes issue with the Appeals Council's ("AC") step two findings, arguing that the record supports a finding that her chronic kidney disease was a severe condition, and requests remand to correct this harmful error. Docket No. 2 at 2, 5. The Commissioner opposed. Dkt. 14, 30. This case is before me by consent of the parties. Dkt. 3, 5-6. After careful review of the administrative record and the briefs on file, and for the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could

justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982).  In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity."  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c).  If not, the disability claim is denied.  At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1.  If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled.  If not, the Administrative Law Judge ("ALJ") assesses the claimant's residual functional capacity ("RFC") and determines at step four whether the impairments prevent the claimant from doing the work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e).  If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of her RFC, as well as her age, education, and work experience.  If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

Pérez v. Commissioner of Social Security, Civil No. 19-1874 (BJM)                                3

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether the claimant can perform other work available in the national economy in view of her RFC, as well as age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of her insured status, or her date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the pertinent parts of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript ("Tr.") found at Docket No. 17.

Pérez was born on January 6, 1967, completed three years of college, does not understand the English language (communicates in the Spanish language), and worked as a dental assistant (semi-skilled or skilled work) for fourteen years. Pérez applied for disability insurance benefits on May 31, 2012, claiming to be disabled since February 9, 2009 (alleged onset date) at age 46[1] due to renal disease, high blood pressure, cervical and lumbar pain and spasms, disc disease, cramps, tinnitus, and an emotional condition. Pérez met the insured status requirements of the Act through March 31, 2015. Tr. 6, 9-10, 114, 151, 160, 298, 329-301, 392.

---

[1] Pérez was considered to be a younger individual (Tr. 9), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

***Treatment Evidence re Kidney Condition***

Pérez directs us to review the following evidence in the record in support of her claim that the AC failed to consider her kidney condition as severe. Docket No. 27 at 5.

Pérez received medical treatment for renal problems at the University of Puerto Rico Medical Sciences Campus. The handwritten "NEPHROLOGY PROGRESS NOTES" are found at Tr. 440-445, and are dated October to December 2011, and June and September 2012. Pérez does not elaborate as to how this evidence supports a severe impairment, and limits herself to mentioning that she received treatment there. I reviewed these notes, which cover a period of less than a year with no legible treating physician's assessment of limitations caused by this condition. As a lay person, I cannot interpret these notes because I, as is the ALJ, am unqualified to interpret "raw, technical medical data." *Berrios v. Sec'y of Health & Human Servs.*, 796 F.2d 574, 576 (1st Cir. 1986).

Pérez also offers as evidence a series of studies in the record that do show that she had kidney issues that were continuously being followed-up and treated with medications. A June 2011 urine laboratory shows high levels of protein (240.80 mg/24 hours versus a normal range of 225.00). Tr. 457. A urine analysis dated November 3, 2011 indicates high levels of urine microalbumin and a high microalbumin/creatinine ratio. Tr. 451, 456. The abdominal sonogram at Tr. 408, performed on November 3, 2011, indicates that the right kidney measure 10.2 cm in length and contains a small cortical-based echogenicity that measures 6.1 x 3.6 x 5.6 mm. The left kidney measured 11.9 cm in length. Dr. Arraiza under the section titled "IMPRESSION:" interpreted the results as revealing a tiny echogenicity within the right renal cortex, with a recommendation for a follow-up study to consider the possibility of a non-shadowing calcification versus small angiomyolipoma. Tr. 472.

Another abdominal sonogram was performed on May 2012, found at Tr. 409, and states the following as to the kidneys: "no pelvicalyceal dilatation with right kidney measuring 10.9 cm in length; left kidney measuring 11.3 cm in length. Right upper pole cortical calcification measure 4 mm, and right mid kidney small focal scar measures 7 mm." This evidence appears to be a two-page report, but includes only page 1, ending in "IMPRESSION:" without the doctor's interpretation of the sonogram results.  I note that the record also contains a urine laboratory analysis, lipid panel, and comprehensive metabolic panel from May 2012. Nothing appeared to be flagged out except for high cholesterol and triglyceride levels. Tested levels were within normal

ranges, including for albumin and creatinine. Tr. 403-405. Another renal function panel dated September 2012 also showed levels within normal ranges, including albumin and creatinine. Tr. 455. However, a September 2012 urine chemistry analysis shows high levels of urine microalbumin and creatinine, and a high microalbumin/creatinine ratio. Tr. 453.

Another abdominal sonogram, performed in March 2015, states the following as to the kidneys: "The right kidney measures 11.0 cm in length. It contains a small cyst measuring 9.2 x 6.5 x 9.5 mm relatively unchanged when compared to the previous study. … The left kidney measures 10.7 cm in length and there is a small echogenic structure with questionable posterior acoustic shadowing measuring 9.6 x 9.8 mm. The possibility of left-sided nephrolithiasis should be considered." Tr. 57, 552. And a radiological study of the abdomen and pelvis, performed in May 2015, revealed "a faint hyperdensity overlying the superior aspect of the right renal shadow measuring 5.2 mm in diameter raising the suspicion of right-sided nephrolithiasis."  Tr. 551.

There is other treatment evidence not proffered by Pérez in her memorandum. Lab work from March 2009 (a little over a month of her alleged February 2009 onset date) shows a normal metabolic panel. Tr. 419.

Dr. Aníbal Pagán Romero, her treating pain management practitioner, prepared in June 2012 a handwritten fill-in-the-blanks report for the Disability Determination Program, in which he stated first attending Pérez in 2011. Tr. 34-36, 399-401. The diagnoses listed are all for back and mental conditions and their limiting effects and fatty liver disease; no renal conditions are mentioned. Tr. 401. Dr. Pagán's treatment notes from September 2014 to March 2015 do not specifically mention her renal condition. They contain diagnoses for high blood pressure, motor neuropathy, pelvic pain, osteoarthritis, and hyperthyroidism, and urge her to continue taking her medications for her distinct conditions Tr. 58-61, 556-559. Notes from January and March 2015 show that Pérez was referred to a gynecologist for pelvic pain. Tr. 58-59. There is also September 2014 and May 2015 emergency room visits for kidney stones. Tr. 63-64, 72.

### *Procedural History*

The following administrative evidence that mentions Pérez's renal condition was not proffered by Pérez but is contained in the record.

Pérez filed a disability report, dated June 15, 2012, in which she listed a renal condition, high blood pressure, cervical and lumbar pain and spams, disc disease, hand numbness, leg cramps, tinnitus, and an emotional condition as her alleged disabling conditions. Tr. 330. Pérez also

Pérez v. Commissioner of Social Security, Civil No. 19-1874 (BJM)                                              6

reported taking Enalapril 5 mg daily as prescribed by the UPR Medical Sciences campus "to prevent kidney failure." Tr. 334.  Pérez also listed treatment with Dr. Pagán due to a nephrotic condition, bilateral kidney cysts, increased creatinine and proteinuria in 24-hour collections, as well as for discogenic disc disease and muscle spasms. Tr. 335.

The case was referred to Dr. Luis Acevedo Marty for a consultative internist examination, performed in October 2012. Tr. 493-499. In the patient history portion of Dr. Acevedo's report, Dr. Acevedo wrote that "[p]atient refers been with renal problems since she was 10 years old, with proteinuria and micro albuminuria." Tr. 494. Dr. Acevedo diagnosed chronic kidney disease, among other diagnoses. Tr. 498. The report indicates that review of the genitourinary system and abdomen was normal. Tr. 495-496.

Dr. Vicente Sánchez, non-examining internist, assessed in November 2012 that Pérez's alleged conditions did not meet or equal a listing level. Her symptoms were credible but their alleged effect on functions was partially credible because there was no disorganization of motor function, no chronic active inflammatory process, no deformity, and no joints instability. Dr. Sánchez further assessed that Pérez had exertional and postural limitations due to her alleged conditions. Pérez was limited to occasionally lifting and/or carrying twenty pounds, and ten pounds frequently. Pérez could stand for about six hours in an eight-hour workday with normal breaks and sit for about six hours. Pérez could push or pull unlimitedly; climb ramps or stairs frequently; climb ladders, ropes, or scaffolds occasionally; balance, kneel, and crouch frequently; and stoop and crawl occasionally. Pérez had no manipulative, visual, communicative, or environmental limitations. Tr. 119, 122-123, 502.

Pérez's claim was initially denied on January 23, 2013. Tr. 12. Pérez requested reconsideration. Tr. 177, 874.

In a disability report for reconsideration purposes, dated March 6, 2013, Pérez specified that her musculoskeletal condition, tinnitus and Ménière's disease in both ears, and her emotional condition affected her ability to do physical movements and her marriage, but it does not mention a renal condition as one of the factors Tr. 342, 347. She also mentioned again Dr. Pagán as "follow up of kidney conditions." Tr. 344. Enalapril is listed as prescribed to control high blood pressure. Tr. 346.

Dr. Karen Stewart Sotomayor, consultative internist, evaluated Pérez in April 2014. Tr. 537-545. Dr. Stewart diagnosed hematuria, microalbuminuria, high blood pressure,

Pérez v. Commissioner of Social Security, Civil No. 19-1874 (BJM)                                           7

hyperlipidemia, hypothyroidism, renal lymphoma bilateral, nephrolithiasis, discogenic disc disease, radiculopathy, tinnitus, breast cyst, and psychiatric disease. Dr. Stewart assessed that because of her lumbar discogenic disease and some signs that suggest radiculopathy, Pérez was limited in her ability to walk, stand, sit, bend, step, kneel, push, handle, lift, carry, grasp, and rise. Prognosis was guarded. Tr. 539. Dr. Elva Montoya, non-examining consultant, offered in June 2014 the same RFC assessment as in the initial determination. Tr. 137-139.

On June 4, 2014, Pérez's claim was denied upon reconsideration. Tr. 16. Pérez requested a hearing before an ALJ. Tr. 184. Pérez filed another disability report, dated July 31, 2014, and reported abnormal levels in blood tests of her kidneys and thyroids when asked if there were changes in any conditions since the last report was filed, and again listed Dr. Pagán as follow-up of her kidneys and thyroid conditions. Tr. 364-365. Enalapril is again listed to control high blood pressure. Tr. 366.

The Commissioner points to testimony offered at the hearing before the ALJ. A hearing before ALJ Mario Silva was held on October 11, 2016. Present were Pérez and her attorney, two medical experts, and a vocational expert. Tr. 258-282. Counsel was asked if the claimant met or equaled any listing, to which counsel answered that while her physical conditions were severe, the worst condition was her emotional conditions which should be evaluated under Listing 12.04. Her back condition should be evaluated under Listing 1.04. Tr. 262-263. The ALJ asked counsel to list all other severe conditions besides depression, anxiety and the back, and counsel answered that Pérez also had a kidney polycystic condition and high blood pressure. Tr. 263.

Pérez testified as to her back conditions and that "I also have kidney problems that run in the family. Eh – I got treatment with doctors here in – in the Medical Sciences Campus." Tr. 264. As to her pain, Pérez testified that "my conditions are hand numbing, I get cramps in my legs, I can't sit for too long … I get cervical pain … I have a lot of ringing in my ears, because I was also diagnosed with chronic tinnitus … sometimes I can't lie down for too long because the pain I get is not just in the back, but also in the part of the – I think it's in the kidneys too, because I have kidney stones, due to tests that they've done … I live in pain constantly …" Tr. 265. When asked by counsel about changes to her treatment with medications because of her pain, Pérez answered that "some have changed, because I take medication for other things, like for pain, and then, since I have my kidney condition, I don't want to ruin my kidney more than it can be already." Tr. 268-269.

Dr. Francisco Joglar, medical expert, summarized the physical conditions in the evidence, and stated that "[a] condition in the kidneys is documented, eh – with evidence of mild protein in the urine and a persistence of … microscopic hematuria, meaning blood that can only be seen in the microscope. But this is not affecting her kidney function, and we believe that at this time, that kidney condition, shouldn't be considered severe." Tr. 271. Upon the ALJ's question to give Pérez a level of exertion with all her physical conditions, Dr. Joglar answered that she could do light exertion (lift twenty pounds occasionally and ten pounds frequently); stand for six hours; climb ladders or stairs frequently and scaffolds occasionally; balance and bend frequently; kneel, crouch, and crawl occasionally; and no limitations in reaching, handling, fingering, and no visual or communicative limitations.  Tr. 272. Counsel did not ask the medical expert about Pérez's kidney condition.

On December 28, 2017, the ALJ found that Pérez was not disabled under sections 216(i) and 223(d) of the Act through December 31, 2014, which was the date on the record at the time as Pérez's date last insured. Tr. 151-167. The ALJ sequentially found that Pérez:

(1) had not engaged in substantial gainful activity since her alleged onset date of February 9, 2009 through December 31, 2014 (Tr. 154);

(2) had severe impairments that as per SSR 85-28 limited Pérez''s ability to perform basic work activities: degenerative disc disease of the cervical and lumbar spine, depression, and obesity. The ALJ also found at this step that "all other impairments other than those enumerated above, alleged, and found in the record, are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimally vocationally relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months or expected to result in death, or have not been properly diagnosed by an acceptable medical source (20 CFR 404.1509 and 404.1513(a)). Accordingly, the tinnitus and renal disease are considered not severe." (Tr. 154);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526) (Tr. 154-156);

(4) retained the RFC to perform light work as defined in 20 CFR 404.1567(b), except she could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs,

kneel, and crawl; and frequently balance, stoop, and crouch. She had to avoid all exposure to unprotected heights. Pérez could also understand, remember, and carry out simple, routine work and could respond appropriately to supervisors and coworkers but could only do so occasionally to the general public. (Tr. 156). Pérez was therefore unable to perform past relevant work (Tr. 160); and

(5)  as per her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Pérez could perform, such as checker I, laundry folder, and labeler. Tr. 161.

The ALJ noted that Dr. Pagán, Pérez's pain management doctor, opined at Exhibit 1F (found at Tr. 399-401) that her cervical and lumbar condition impeded her ability to work, and gave this opinion little weight because that determination is reserved for the Commissioner. Tr. 159.

In January 2018, Pérez requested that the AC review the ALJ's decision. Tr. 6, 283. The AC granted the request for review on June 15, 2019, and notified Pérez that "[w]e plan to make a corrective decision finding that you were not disabled through March 31, 2015." Tr. 286. The AC would correct the date last insured in the record from December 31, 2014 to March 31, 2015 and rule on that unadjudicated time period. The AC also advised Pérez that it would adopt the ALJ's non-disability findings but supplement the ALJ's failure to sufficiently support the weight given to Dr. Pagán's treating physician opinion and to the opinions of the consultative psychological examiners and explain why these opinions where inconsistent with the record evidence or consider the treating relationship as required by 20 C.F.R. 404.1520(c). Tr. 285-286. The AC granted Pérez the opportunity to offer a statement about the facts and law or additional admissible evidence (Tr. 287), which Pérez did not do. Tr. 6.

On August 1, 2019, the AC found that Pérez was not disabled under sections 216(i) and 223(d) of the Act. Tr. 6-11. The AC adopted all the ALJ's findings, including the step two findings, except for Pérez's date last insured, which the AC modified from December 31, 2014, to March 31, 2015, and supplemented the ALJ's rationale for affording Dr. Pérez's opinion little weight. Tr. 6-7.

The AC sequentially found that Pérez:

(1) did not engaged in substantial gainful activity since February 9, 2009, her alleged onset date (Tr. 9);

Pérez v. Commissioner of Social Security, Civil No. 19-1874 (BJM)                                    10

(2) had severe impairments: degenerative disc disease of the cervical and lumbar spine, depression, and obesity (Tr. 9);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 9);

(4) retained the RFC to perform a reduced range of light work as defined in 20 CFR 404.1567(b) (she could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, kneel, and crawl; and frequently balance, stoop, and crouch. She had to avoid all exposure to unprotected heights). Pérez could also perform unskilled work (understand, remember, and carry out simple, routine tasks; make simple, work-related decisions; adjust to work changes in a setting with simple, routine work; and respond appropriately to supervisors and coworkers but only occasionally respond appropriately to the general public). Pérez therefore was unable to perform past relevant work (Tr. 9); and

(5) although Pérez's exertional and non-exertional impairments did not allow her to perform the full range of light exertional work, using 20 CFR 404.1569 and Rule 202.18, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, as a framework for decision-making, there existed a significant number of light unskilled jobs in the national economy that Pérez could perform through her date last insured, such as checker I, laundry folder, and labeler. Tr. 9-10.

The AC found that Pérez's alleged symptoms are not consistent with the evidence in record. Tr. 9. The AC also found that for the time period not considered by the ALJ, from December 31, 2014 through March 31, 2015, the evidence did not show a worsening that would support additional physical or mental limitations or a different outcome. Tr. 7.

With the Appeals Council's decision being the final decision of the Commissioner, the present complaint followed. Docket No. 2.

## DISCUSSION

Pérez takes issue with the AC's step two findings. Pérez argues that the record supports a finding that her chronic kidney disease was a severe condition, and requests remand to correct this harmful error. Docket No. 2 at 2, 5. The Commissioner argues that the record contains substantial evidence, including testimony from a medical expert, that supports the determination that Pérez's renal condition was not severe.

Step two demands a determination of two things: (1) whether a claimant has a medically determinable impairment or combination of impairments, and (2) whether the impairments or

combination of impairments is severe, that is, that it significantly limits or is expected to significantly limit the ability to perform basic work-related activities for twelve consecutive months. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); 20 C.F.R. §§ 404.1520(a)(4)(ii) & 404.1520(c); 20 C.F.R. § 404.1521. An impairment is non-severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. Physical work functions include such things as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. §§ 404.1522(a) & 404.1522(b)(1); SSR 85-28. The ALJ determined as per SSR 85-28, and the AC so adopted the finding, that Pérez had severe impairments which limited her ability to perform basic work activities (degenerative disc disease of the cervical and lumbar spine, depression, and obesity) but that "all other impairments other than those enumerated above, alleged, and found in the record, are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimally vocationally relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months or expected to result in death, or have not been properly diagnosed by an acceptable medical source (20 CFR 404.1509 and 404.1513(a)). Accordingly, the tinnitus and renal disease are considered not severe." Tr. 154. There is no further mention of Pérez's renal condition beyond this explanation.

In reviewing the record for substantial evidence that supports or not the ALJ's and AC's non-severity finding, I am mindful that the claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). A medically determinable impairment or combination of impairments "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. It "must be established by objective medical evidence from an acceptable medical source," and cannot be based on a claimant's "statement of symptoms, a diagnosis, or a medical opinion." *Id.* "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f). "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [symptoms]." 20 C.F.R. § 404.1502(g). "Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1502(c). "Diagnostic techniques

include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." *Id.* I have summarized above the evidence in the record as to Pérez's renal condition and after reviewing it, I am compelled to conclude that the record supports a finding of non-severity. I discuss below.

The record contains a series of diagnostic techniques that support a finding that Pérez did indeed have kidney issues and was prescribed medications. In 2011 and 2012, two urine analyses showed high levels of protein, high levels of urine microalbumin and a high microalbumin/creatinine ratio. Two other metabolic panels from this time period and one from 2009 about a month after her alleged onset date, appeared normal. At around this time, Dr. Pagán prepared a report for the Disability Determination Program, in June 2012, in which he did not list a renal condition as one of Pérez's disabling conditions, only listing her back and mental problems. And when Pérez was seen by Dr. Acevedo in October 2012 for the consultative internist examination, Pérez informed having renal problems since age ten. Dr. Sánchez, the non-examining internist, concluded that with the evidence available at the time, none of her conditions equaled a listing level. Dr. Stewart, consultative internist on reconsideration, diagnosed in April 2014 kidney stones, microalbuminuria, renal lymphoma, and hematuria (blood in the urine) but did not include Pérez's kidney conditions as one of the conditions that created physical limitations. And both Dr. Sánchez and Dr. Montoya, non-examining consultants, assessed that Pérez could perform light work with some additional limitations. Pérez's own testimony and reports are telling. She testified that kidney stones run in the family, that Dr. Pagán and the UPR Medical Sciences Campus aided her with pain management, and that she was careful about medication intake because of her kidney condition. Imaging studies from 2015 and emergency room visits from 2014 and 2015 confirm that she suffered from kidney stones. Finally, Dr. Joglar, the medical expert that testified at the hearing, opined that Pérez's renal condition should not be considered severe and that she was able to do light work. From the overall evidence in the record, it is reasonable to conclude that Pérez has handled her renal condition for the most part of her life and that condition alone had not impeded her from working for fourteen years. Other conditions, which the ALJ and the AC did find as severe and limiting, were considered and so tabulated into the RFC assessment ultimately used by the Commissioner to administratively resolve this case. I therefore find that there is

Pérez v. Commissioner of Social Security, Civil No. 19-1874 (BJM)                                    13

substantial evidence in the record to support the AC's decision as to Pérez's sole argument in this complaint.

On a last note, Pérez inserted in the last portion of her memorandum citations of the ALJ's duty to explain the weight granted to medical opinions and not substitute the medical evidence for his own lay person's judgment (*see* Docket No. 27 at 6) but did not offer arguments or direct this court to evidence that would persuade us so. Interestingly, this was one of the main reasons why the AC granted review of the ALJ's decision. I am therefore deeming waived any argument that Pérez was attempting to raise in this skeletal manner.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at 769 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the AC's step two finding. The decision is therefore affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2021.


*s/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge